## WALTER GRAHAM, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

Upon a writ of error to review a conviction for murder, had in a court of oyer and terminer, it is not sufficient that the records of the court below show a conviction and sentence. It must be made expressly to appear, by a distinct statement in the record sent up as a part of the return, that the prisoner was asked, after his conviction, what he had to say why judgment should not be pronounced against him. The omission of such a statement is fatal to the judgment.

Where a court of oyer and terminer, in its return to a writ of *certiorari*, adhered to the return made by it to a writ of error, as containing the only authentic record of its judgment, in the premises, and declined in any way to alter and amend its minutes without the direction, order or permission of this court, (although they were erroneous,) for the reason that "the record of judgment" was before this court by the return to the writ of error; *Held* that in taking this position the court of oyer and terminer had mistaken the law and practice; inasmuch as, in modern times, the *very record* itself is not sent up, on a writ of error, but only a transcript, and for the purposes of an *amendment*, the record remains in the court below.

The motion to amend a record of a court of oyer and terminer, after a return has been made to a writ of error, should not be made in the Supreme Court. If improper matter has been interpolated in the minutes constituting a part of the return, without the authority of the court of oyer and terminer, and which is no part of its record, that court should direct such matter to be expunged from its minutes.

Where the returns made to a writ of error, and to a *certiorari*, differed in an essential particular, viz., as to the fact whether the prisoner was asked if he had anything to say why sentence should not be pronounced; the former omitting to show that the prisoner was given an opportunity to show any cause, and the latter stating that he was asked that question, and in response thereto made some remarks; it was *held* that the return to the writ of error, being signed by the presiding judge of the oyer and terminer, and by the district attorney, and bearing upon its face the evidence that it had been inspected by the court, while the return to the *certiorari* was not so signed, the return to the writ of error was to be regarded as containing the authentic judgment of the court below, and upon which this court was to proceed and render judgment.

Where the return shows that a part of the minutes, embraced therein, is not the record of the court below, but is in legal effect a forgery, and should have been expunged, by the court below from its minutes, the effect of the return, taken altogether, must be to produce the same result, in this court, as though the interpolated matter had been expunged.

Upon the reversal of a judgment of a court of oyer and terminer, on the

Graham *v.* The People.

ground that it does not appear, from the return to the writ of error, that the prisoner was asked if he had anything to say why sentence should not be pronounced, the case is not to be remitted to the court below for sentence, nor is the prisoner to be absolutely discharged; but this court will proceed to examine the errors alleged to have been committed on the trial, and if it is of opinion that the court of oyer and terminer erred in admitting improper testimony against the prisoner, will grant a new trial.

On a trial for murder, an attorney employed by the prisoner on the day of the alleged murder, to draw for him certain papers, viz., a lease and receipt, cannot be compelled to testify to the drawing of such papers by him, or to the contents thereof; nor as to the state of either of the papers, when delivered to the prisoner; where such papers are not in any manner necessarily connected with the perpetration of any crime, and they cannot, of themselves, in any way aid in the commission of any fraud or crime.

WRIT of error to the court of oyer and terminer of Wayne county.

*D. L. Stow* and *J. D. Husbands,* for the plaintiff in error.

*C. H. Roys,* (district attorney,) and *Geo. F. Danforth,* for the defendants in error.

*By the Court,* TALCOTT, J.   The plaintiff in error was, in October, 1870, in the oyer and terminer of Wayne county, convicted of the willful murder of one Samuel Olts, alleged to have been committed in January, 1870, and sentenced by the court to be hanged, on the 14th day of January, 1871.   He sued out a writ of error, commanding the court of oyer and terminer to return the record and proceedings into this court.   And thereupon an order staying proceedings on the judgment was made by the justice of the Supreme Court, who presided on the trial.   The clerk of Wayne county returned to the said writ of error, the indictment, the bill of exceptions taken by the prisoner on the trial, and what purports to be a copy of the minutes of the court of oyer and terminer, purporting to have been made and taken in that court on the 24th day of October, 1870.   This paper recites that the prisoner

having been duly indicted, &c., and having been arraigned and tried by a jury, and convicted upon the indictment for the said offence of murder in the first degree, then proceeds to state as follows : " He is sentenced by the said court now here to be returned to the common jail of Wayne county, there to be kept till the 21st day of December, 1870, on which day, between the hours of ten o'clock in the forenoon and four o'clock in the afternoon of that day, he shall be carried by the sheriff of Wayne county to the place of execution," &c.

This paper purports to have been signed by the then district attorney of the county of Wayne, and by the justice of the Supreme Court who presided on the trial, and is indorsed as a "record of conviction," and from a further indorsement thereon appears to have been filed on the 5th day of November, 1870. And this paper is returned to the writ of error, on the 27th day of January, 1871, by the clerk of Wayne county, under his seal of office, as the record of judgment in the case. The indictment, the bill of exceptions, the paper, the contents of which are above stated, and the writ of error, are the only papers copies of which are returned to the writ of error. It will be perceived that the paper returned as the judgment, does not state that the defendant ever pleaded to the indictment, or that, before sentence, he was asked if he had anything to say why the judgment of the court should not be pronounced upon the conviction.

At the September term, 1871, the defendants in error made a motion to dismiss the writ of error, upon the ground that no formal record of conviction appeared ; or, in the alternative, that the motion to dismiss should be denied ; that a certiorari alleging diminution should be issued. At the following term the motion to dismiss the writ of error was denied, and a writ of certiorari ordered to be issued. On this motion it appeared that no formal record of conviction, according to the common law, had

ever been filed in the case. It was also further alleged, by the defendants in error, that the paper, so returned as the judgment record, was incorrect, and that in fact the minutes of the court, as existing at the time of the motion, showed that the prisoner, previous to his sentence, was asked the usual question, as to what he had to say why sentence should not be pronounced upon him. On the part of the plaintiff in error, affidavits were produced, on that motion, tending to show that the statement as to the prisoner having been asked what he had to say, &c., was an interpolation and alteration of the records of the court of oyer and terminer, made without the order or authority of the court, and long after its adjournment, and after, not only the issuing, but the return to the writ of error. On the argument of the motion, it was suggested to the counsel for the plaintiff in error, that if such was the fact, the remedy was by an application to the court of oyer and terminer, and in the order made by this court directing the certiorari, leave was given to the parties to move in the oyer and terminer for such relief as either might be deemed entitled to. The writ of certiorari is now returned to this court. The return consists of a statement, on the part of the court of oyer and terminer, setting forth that, " on searching the records of said court, it finds that at a court of oyer and terminer, held at the village of Lyons, in and for the county of Wayne, on the 24th day of October, 1870 : present, Hon. C. C. Dwight, justice, L. M. Norton, county judge, C. C. Teall, justice of sessions, J. L. Hedden, justice of sessions.

The People vs. Walter Graham. Indictment for murder, 1st degree.

The said Walter Graham having been heretofore duly indicted for having, on the 14th day of January, 1870, committed the crime of murder in the first degree, and having been duly brought into court and tried by a jury at the present term of this court, he was found guilty by said

jury on the 27th day of October, 1870, of the crime charged against him in said indictment. On motion of J. H. Camp, district attorney, prisoner Walter Graham brought into court and sentence moved. Whereupon the prisoner, Walter Graham, was ordered to stand up, and the court asked the said Walter Graham if he had anything to say why the sentence of the law should not be pronounced against him, and thereupon the prisoner made some remarks. Whereupon·the court now here sentence the said Walter Graham to be returned to the county jail, of the county of Wayne, until the 21st day of December, 1870, at which time he shall be taken from said jail to the place of execution, and between the hours of ten in the forenoon and four o'clock in the afternoon, be hanged by the neck until he is dead. And this we do·certify to the justices of the Supreme Court, as we are within commanded."

The return then proceeds to set forth an order made by the court of oyer and terminer, held in and for the county of Wayne, on the 22d day of April, 1872. The order recites that a motion having been made at the (then) present term of said court by the above named Walter Graham, to strike out and expunge that portion of the records and minutes of the clerk of Wayne county, which states that Graham was asked why sentence should not be pronounced, &c., orders " that said motion be denied, upon the ground that the record of judgment in this case now being in the Supreme Court, before the general term thereof, by the return of the clerk of this court to the writ of error herein, and no order having been made by said general term, remitting the said judgment record to this court for amendment, and a writ of certiorari having been issued to this court, by an order of the last general term of the Supreme Court, to certify to the Supreme Court, at the next general term thereof, the records and proceedings of this court when pronouncing sentence upon said Graham, this court deems it improper to alter, modify or amend, the

Graham *v.* The People.

records and proceedings, entries and orders, before return made to said writ of certiorari, without the direction, order or permission of the said general term; but this court nevertheless finds and certifies to the said general term, that that portion of the records and clerk's minutes asked to be stricken out, is true, and recites correctly the proceedings it describes ; that the prisoner, said Walter Graham, was asked, after his conviction at a term of this court in October, 1870, and before sentence was passed upon him, what he had to say why sentence should not be pronounced upon him; and that the portion of the minutes of the said clerk which states that the prisoner was asked such question, was added to and written in the said minutes and records, after the term at which said Graham was convicted had adjourned, and within two weeks prior to the 5th day of May, 1871. And it is further ordered that the return of this court to the said writ of certiorari, contain and include the notice of motion made at the present term of this court, and the affidavit in support thereof, together with the affidavits and papers read in opposition thereto, and this order made thereon."

This is certainly an extraordinary return to a writ of certiorari, which only required the court of oyer and terminer to return the record and proceedings of the said court of oyer and terminer when pronouncing sentence upon the said Walter Graham, at the October term of the said court, in the year 1870. It purports, in the first instance, to return the minutes of the court made and entered on the 24th day of October 1870.

These minutes state that the prisoner was found guilty on the 27th day of October, 1870, and proceed to state that the court "now here" (viz., on the 24th day of October, 1870) sentence the prisoner to be hanged. It appears also from the bill of exceptions signed and sealed by the judges of the oyer and terminer that the prisoner was convicted on the 27th day of October, 1870. So that, so far

as these minutes are to be relied on, they show that the prisoner was sentenced before conviction. There is probably some error in this matter, which should have been corrected in the court of oyer and terminer. It is a singular fact, that what was returned to the writ of error as the record of judgment, purports to be the minutes of the proceedings of the oyer and terminer on the 14th day of October. It is not however necessary to consider, in this case, what effect these statements of dates in the various papers before us might have in a case where the question turned upon this point. In the case of *Weed* v. *The People*, (31 *N. Y.* 465,) the judgment was reversed for what was undoubtedly a mere clerical error in the record of the court below, the singular instead of the plural number being used, whereby it was made to appear that the trial, conviction and sentence, took place before one only of the judges of the oyer and terminer. It will be perceived that the court of oyer and terminer, by its return to the writ of certiorari, seems to abide by the return made to the writ of error, as containing the only authentic record of its judgment in the premises, and declines in any way to alter and amend its minutes, without the direction, order or permission of this court, because "the record of judgment" is before this court by the return to the writ of error. We apprehend that in this position the court of oyer and terminer has mistaken the law and the practice. In modern times the *very record* itself is not sent up on a writ of error, but only a transcript, and for the purposes of an amendment, the record remains in the court below. (*Rew* v. *Barker*, 2 *Cowen*, 408. *Luysten* v. *Sniffen*, 1 *Barb.* 428.) Though there are authorities which hold that in civil actions the record of the court below may be amended in the court of review. (*Pease* v. *Morgan*, 7 *John.* 467.) When the court below amends its record, the transcript thereof may be amended on motion, in this court. (*Rew* v. *Barker*, 2 *Cowen*, 408.)

Graham *v*. The People.

The court of oyer and terminer, in this case, seems to have been under the impression that the motion to amend its record, after a return to a writ of error, should be made in this court. This we conceive to be an erroneous view of the law. Independent of the inherent impropriety of an attempt by one court to amend the record of another, the Revised Statutes require the court of review, in criminal cases, to proceed and render judgment on the record before them. (2 *R. S.* 741, §§ 20, 23.)

It was held in the third district, that this provision had even the effect to abrogate the certiorari, alleging diminution in criminal cases. (*People* v. *McCann*, 3 *Parker*, 272.) But this decision was afterwards overruled in the same district, (*O'Leary* v. *The People*, 17 *How*. 316,) and it is now settled by the court of last resort, that such a writ may still issue. (*Cancemi* v. *The People*, 18 *N. Y*. 128. *S. C.*, 16 *id*. 501.)

In this case the motion was not to amend the records of the court, but to expunge therefrom matter which had been inserted without its authority, and which was no part of its record. What are the common law powers of the court, as to amendments in criminal cases, and whether the statute of *jeofails* applies to such cases, it is unnecessary to consider. There can, we think, be no doubt but what the court of oyer and terminer should have expunged from its minutes the matter which had been interpolated without its authority, and thus have prevented the possibility of the interpolated matter being returned to this court as a part of its record.

Proceeding, however, to consider the case on the record before us, we find that by the return to the writ of error and the certiorari, we have presented to us two documents purporting to be the minutes of the proceedings of the court of oyer and terminer of Wayne county, on the 24th day of October, 1870. They differ in regard to the essential matter whether the prisoner was asked if he had any-

thing to say why sentence should not be pronounced. That which was returned to the writ of error, and which the court below insists upon as the record of its judgment, wholly omits to show that the prisoner was given an opportunity to show any cause; in which case the Court of Appeals has held that the judgment is void; whereas the minutes returned to the certiorari, state that the prisoner was asked that question, and in response thereto made some remarks. No motion appears to have been made in the court below to correct those minutes, which were returned upon the writ of error. Upon which of these two documents are we to proceed and render judgment? Which is to be regarded as the authentic judgment of the court below? The record returned to the writ of error, is signed by the presiding judge of the court, and by the district attorney.

The revised statutes (2 *R. S.* 738, § 5) provide that "whenever any judgment upon any conviction shall be rendered in any court, it shall be the duty of the clerk thereof to enter such judgment fully in his minutes, stating briefly the offence for which such conviction shall have been had, and the court shall inspect such minutes, and conform them to the facts."

The statutes further provide, in the next section, (§ 6:) "It shall be the duty of the district attorney, upon being required by the clerk, to prepare for him a statement of the offence of which any person shall be convicted, as the same is charged in the indictment to be entered in the minutes of such clerk; but the court shall inspect the same, and conform it to the indictment." A following section (§ 10) enacts as follows: "A copy of the minutes of any conviction, with the sentence of the court thereon, entered by the clerk of any court, duly certified by the clerk in whose custody such minutes shall be, under his official seal, together with a copy of the indictment on which such conviction shall have been had, certified in the

The People *v.* Graham.

same manner, shall be evidence in all courts and places of such conviction, in all cases in which it shall appear, by the certificate of the clerk or otherwise, that no record of judgment on such conviction has been signed and filed." The entry returned to the writ of error is signed by the presiding judge, and by the district attorney. It is plain that the entries which are declared to be evidence in all courts and places, are those entries inspected by the court under sections 5 and 6, above referred to; and while there is no provision requiring the entry prepared by the district attorney or by the clerk, and inspected by the court, to be signed by either the district attorney or a judge of the court, yet the entry returned to the writ of error is so signed, while that returned to the certiorari is not. On the motion to dismiss the writ of error in this case, because no judgment record was made up, we held that the statute before referred to, making the certified copy of the minutes of conviction, the sentence of the court and a certified copy of the indictment, evidence of the conviction in all courts and places, in conjunction with another section of the Revised Statutes, which provides that, upon a writ of error being filed, which shall operate as a stay of proceedings, it shall be the duty of the clerk of the court to make a return thereto, containing a transcript of the indictment, bill of exceptions and judgment of the court, (3 *R. S.* 1034, § 22, *5th ed.,*) authorized the court of review to proceed to review and reverse or affirm the judgment of the court below, when no formal, common law record of judgment had been made up and filed or signed. (*See opinion of Mullin, J., in this case, on the motion to dismiss the writ of error.*) The judgment of the court, which is to be returned when no formal record of judgment has been filed, is undoubtedly the judgment entered in the minutes, and duly inspected by the court.

The minutes returned upon the writ of error, upon their face bear the evidence that they have been inspected by

the court, whereas the order made by the court below, on the motion to expunge, and by the direction of that court made a part of its return to the writ of certiorari, shows that the minutes, as returned upon that writ, have not been inspected or sanctioned by the court.

Moreover, the minutes, as returned to the certiorari, are directly impeached, and so far as relates to the question of the prisoner having been asked if he had anything to say, &c., are overthrown by the return, in which the court below informs us that so much of the entry is not a part of its record, but was interpolated in its absence and without its order. Even under the Statute of *jeofails* such an alteration of the records of the court is wholly unauthorized and void. That statute, from abundant caution, expressly provides that "no process, pleading or record, shall be amended or impaired by the clerk or other officer of any court, or by any other person, without the order of such court, or some other court of competent authority." (2 *R. S.* 425, § 9.) The return of the court below, therefore, shows to us that such part of the minutes is not their record, but is in legal effect a forgery; and while we think that court should have expunged the interpolated matter from its minutes, yet we think the effect of the return, taken altogether, must produce the same result in this court as though the interpolated statement had been expunged; and so regarding it, we must hold that the records of the court below do not show that the prisoner was asked what he had to say why judgment should not be pronounced against him. This is fatal to the judgment, as has been recently determined by the Court of Appeals. (*Messner* v. *The People*, 45 *N. Y.* 1.) According to that decision it is not sufficient that the records of the court show a conviction and sentence. It is not to be presumed from these, that the practice of asking the prisoner, before sentence, what he had to say, &c., has been complied with, but it is necessary that a compliance with this prerequisite

to the validity of the sentence should be made expressly to appear, on a writ of error, by a distinct statement in the record of the court below.

There is another peculiarity in this case, to which it is proper to allude. The order made by the court of oyer and terminer on the motion to expunge, and which, by its direction is made a part of the return to the certiorari, contains the following: "But this court, nevertheless, finds and certifies to the said general term, that that portion of the records and clerk's minutes asked to be stricken out on this motion is true." This does not seem to us to vary the case. The writ of certiorari issued out of this court did not call upon the court of oyer and terminer to make a return stating whether, as a matter of fact *dehors* the record, Graham had been asked the question referred to, but to return "the record of the proceedings of said court of oyer and terminer, when pronouncing sentence upon the said Walter Graham at the October term of said court, in the year 1870, and especially the *record*, if any, of the request of said court to said Graham to say what he might have to say, why sentence should not be pronounced upon him." The court below neither assumes to amend its record, nor to adopt the unauthorized interpolation, but returns to this court that certain facts exist, which, if amendments can be made in criminal cases, might justify it in ordering an amendment. We can pay no attention to the statement. It was held, in *Stephens* v. *The People*, (19 *N. Y.* 549,) that "a material omission in a record cannot be cured by a separate certificate. The only remedy in such case is by amendment, which can only be made by order of the court." It is further to be observed that the two records which have been returned to us are deficient in other particulars. They fail to show any legal trial or conviction. The record returned to the writ of error fails to show any plea of the defendant, or entered for him by order of the court, and the second record re-

Graham *v.* The People.

turned fails to show that the prisoner was ever arraigned upon the indictment, or ever was called upon to, or did plead to the same. The bill of exceptions contains a statement that the prisoner was arraigned and pleaded, but that is no part of the record of judgment. As no observations were made by the counsel on this defect, we will not discuss the consequences of it, since it cannot change the result at which we have arrived.

The foregoing statement of facts, and our conclusions, lead to the conclusion that, in conformity with the decision of the Court of Appeals, the judgment must be reversed, because it does not appear that the defendant was asked if he had anything to say why sentence should not pronounced.

What is the consequence of a simple reversal of the judgment in such a case, upon such a ground? Does the verdict stand, and is the case to be remitted to the court below for sentence, or is the prisoner to be absolutely discharged? This question was somewhat mooted in the case of *Messner* v. *The People*, but there, as in the case at bar, another feature was presented. In that case, as in this, the plaintiff in error presented a bill of exceptions, claiming that errors had been committed on the trial which entitled him to a new trial, and the Court of Appeals having found such error, a new trial was ordered, and Messner was subsequently re-tried, convicted and executed. As was done therefore in that case, we proceed to examine the errors alleged to have occurred on the trial and to appear in the bill of exceptions. And we are of opinion that the court of oyer and terminer committed a manifest error against the prisoner, in the admission of testimony against him. It appeared that no one, except the prisoner and the deceased, were present when the homicide was committed. The prisoner had admitted that he killed the deceased, but alleged that such killing

Graham v. The People.

was in self defense. It appeared that the homicide was committed, at some time in the afternoon or evening of the 14th of January, 1870. The prosecution called as a witness Columbus J. Viele, a lawyer, having an office and practicing as an attorney at law, at the village of Wolcott, which was near the scene of the homicide; and sought to prove by his oral testimony that the prisoner, on the afternoon of the said 14th day of January, had applied to him to draw, and in pursuance of such employment he had drawn, a certain lease of a farm from the deceased to the prisoner, for the period of five years, and also a certain receipt, as follows: "Received of Walter Graham four hundred and twenty-six dollars in full of all demands, on a note given by Alexander Graham to me.

Dated Tuesday, January 14, 1870."

It clearly appeared, by the preliminary cross-examination of the witness, that he was retained and employed by the prisoner in his capacity as an attorney, to draw these papers, and thereupon the counsel for the prisoner objected to his being examined on the subject referred to, the objection being renewed to every material statement of the witness concerning the alleged interview, and what transpired thereat. All such objections were overruled, and to the various rulings the defendant excepted. The lease was not produced, but it was admitted that notice had been given to the prisoner to produce the same, and the witness was permitted, against the objection of the prisoner, to state, so far as he could recollect, the contents thereof. The receipt had been found in the pocket book of the prisoner, and was produced, and purported to have been signed by Samuel Olts, the deceased, and one Maria Graham. The witness was asked, on the part of the people, "At the time you gave it to Graham, was all the writing that is on that paper now, on it?" to which he answered, "No, sir." He was then asked, "What portion that was not on it at that time, is on it now?" This ques-

tion was objected to, on the part of the defendant, upon the ground that the communication between the prisoner and the witness was privileged. The objection was overruled, and the prisoner excepted. The witness thereupon stated that the signatures were not upon the paper when he delivered it to the prisoner.

Evidence was also given that the prisoner, after the homicide, claimed to have such a lease from the deceased as the attorney described, and evidence was also given of the existence of such a note as was described in the receipt made by Alexander Graham to the deceased, for the benefit and accommodation of the prisoner; and the evidence tended to establish the probability that the prisoner did not pay the note at the time specified in the receipt, or at any other time, but that the same was afterwards paid and taken up by his brother, the maker of the note. Facts were also given in evidence, on the part of the people, to show the impossibility that the deceased had ever made or agreed to make the lease which the prisoner had employed the attorney to draw. No direct evidence was given as to the genuineness of the signatures purporting to be signed to the receipt. The precise theory as to its pertinency, upon which all this evidence was offered and admitted, though somewhat obscure, seems to have been this, namely: That the prisoner procured the lease and receipt to be drawn, having it in contemplation to forge the signature of the deceased to the lease and receipt, and to murder the deceased, in order that the forgery might be undetected, and the lease and receipt be set up as valid and genuine instruments. This evidence was apparently offered to refute the claim of the prisoner that the homicide was the result of a sudden attack upon him by the deceased, and was committed *se defendendo*.

The testimony of the attorney, Columbus J. Viele, was wholly inadmissible. It is stated that the evidence was admitted by the oyer and terminer, upon the strength of

the opinion of Selden, J., in *Whiting* v. *Burney*, (30 *N. Y.* 330,) to the effect that professional communications between client and attorney are only privileged when they relate to some suit or judicial proceeding pending or anticipated. But this proposition of Selden, J., in that case, was not assented to by the other members of the court, who concurred in the result upon another ground, as appears from the report of the case, and as is shown in the opinion of Foster, J., in *Brand* v. *Brand*, (39 *How. Pr. R.* 260,) and the proposition has been since distinctly overruled. (*Williams* v. *Fitch*, 18 *N. Y.* 550. *Britton* v. *Lorenz*, 45 *id.* 57.)

The true rule is laid down by *Greenleaf*, as follows: "The rule is clear and well settled, that the confidential counsellor, solicitor or attorney of the party cannot be compelled to disclose papers delivered or communications made to him in that capacity. This protection, says *Lord Ch. Brougham*, 'is not qualified by any reference to proceedings pending or in contemplation. If touching matters that come within the ordinary scope of professional employments, they receive a communication in their professional capacity, either from a client, or on his account and for his benefit, in the transaction of his business, or, which amounts to the same thing, if they commit to paper in the course of their employment, in his behalf, matters which they know only through their professional relation to their client, they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information, or produce the papers in any court of law or equity, either as a party or as a witness.' " (1 *Greenleaf's Ev.* § 237.) And as particularly applicable to the question put to the attorney as to the state of the receipt when delivered by him to the client, see *Wheatley* v. *Williams.* (1 *M. & W.* 533 ;) *Brown* v. *Pargon*, (4 *N. H.* 443 ;) *Coveney* v. *Tannahil*, (1 *Hill*, 33.)

The case is not within the rule that a communication

Graham *v.* The People.

made to an attorney to obtain professional advice as to the commission of a felony or other crime *malum in se,* is not privileged. (*Bank of Utica* v. *Mersereau,* 3 *Barb. Ch.* 598.)

The advice sought of the attorney, and the instruments procured to be drawn by him, were in themselves wholly irrelevant, and in no manner necessarily connected with the perpetration of any crime; nor could they, of themselves, in any way aid in the commission of any fraud or crime. In fact the assumption that the prisoner has committed or contemplated any crime, in connection with the instruments which he employed Mr. Viele to draw, is merely conjectural, and itself founded upon an inference drawn from the inadmissible testimony of the attorney, to wit, that on a certain day and hour the prisoner applied to him to draw those instruments.

We are, therefore, of the opinion that in the admission of the testimony of Columbus J. Viele, against the objection of the prisoner, the court of oyer and terminer erred; and following the course adopted by the Court of Appeals in *Mesner* v. *The People,* where the record did not show that the prisoner had been asked what he had to say, &c., and where there was also found error committed against him in the admission of evidence on the trial, we reverse the judgment of the oyer and terminer, and grant to the prisoner a new trial in the case.

Judgment of the oyer and terminer of Wayne county reversed, and new trial ordered in that court.

[Fourth Department, General Term, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker,* Justices.]